UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARIE LYNCH,

        Plaintiff,

-against-                                          19 civ. 6536 (CM)

METROPOLITAN TRANSIT AUTHORITY METRO-
NORTH RAILROAD,

        Defendant.

------------------------------------------------------------X

## RULINGS IN LIMINE

The court, for its rulings on the motions in limine:

**Plaintiff's Motions in Limine**

Plaintiff made no such motions.

**Defendant's Motions in Limine**

*Motions Addressed to Liability*

1.    Defendant's motion in limine to preclude plaintiff from arguing spoliation of evidence due to the failure to provide her with video other than the video of the actual attack – which was preserved, per MTA policy – is GRANTED.

      This court prefers spoliation issues to be dealt with well prior to trial, although as I took this case over from another judge's docket I understand that he might not have imposed the same requirement. However, the plaintiff has offered no evidence that the homeless man who accosted her behaved in a threatening manner toward anyone else in the terminal on the day in question, let alone that defendant had notice of same such that it might have been inclined to keep video footage for any period of time other than the period encompassed by the attack on plaintiff. Her request for video footage that would not be preserved in the ordinary course, and that was discarded pursuant to customary business practices, is, in the opinion of the court, nothing more than a fishing expedition in the hope of finding something that might support her theory of the case. The request is unreasonable in scope and the court would have disallowed it had this issue arisen before me in discovery.

2.   Defendant's motion is limine to preclude evidence about the assailant's prior criminal convictions is GRANTED.

The only relevant issue is whether defendant had any basis to know that Mr. Whitney was a violent person prior to the time that he attacked the plaintiff. While the incident involving Mr. Whitney's arrest for shoplifting a bottle of baby oil from a vendor located in GCT took place somewhere in the terminal, the act itself demonstrates no propensity for violence and is inadmissible for that reason alone. The evidence about a bench warrant for assault on a woman outside a homeless shelter in Brooklyn is not admissible because (1) it does not appear that Whitney was ever arrested, let alone convicted, of that assault; (2) plaintiff offers no evidence tending to show that defendant or anyone associated with defendant (viz., the MTA Police) were aware of this warrant until AFTER Whitney was arrested for assaulting the plaintiff; that being so, it has no bearing on the issue of notice. Therefore, the fact of these prior incidents – always highly prejudicial evidence – has no bearing on the issue to be tried in this case and would be confusing to the jury. FRE 403.

3.   Defendant's motion in limine to preclude the introduction of evidence about nine incidents of violent behavior by random individuals in Grand Central Terminal is GRANTED IN PART AND DENIED IN PART.

Plaintiff alleges that Defendant knew or should have known that Grand Central Terminal ("GCT") is "infested" by homeless people, and that many of these homeless people are violent, and that Defendant failed to address the so-called infestation and to ensure a safe work environment. In support of her theory, Plaintiff wishes to introduce nine Metro North investigator reports detailing prior "violent" incidents against employees that occurred at GCT. To be admissible, each report must tend to prove that the given incident "did in fact call, or should have called, to the employer's attention the special dangers found at a particular location." *Hartel v. Long Island R. Co.*, 476 F.2d 465, 464 (2d Cir. 1973).

The Second Circuit specifically limits evidence of this sort to (1) those occurring at the **exact locus** of the incident giving rise to the litigation; and (2) the circumstances under which such incidents occurred were **substantially the same** as those in the action brought. Id. While plaintiff admits that these incidents involved homeless people, vagrants "and others," it is not plaintiff's theory that everyone who enters GCT is a potentially violent person, but rather that homeless people like Mr. Whitney pose a particular risk. Therefore, in the opinion of this court, incidents involving "others" are not sufficiently similar to the incident involving the plaintiff to be admissible on the issue of notice.

That being so, the following 7 reports are not admitted:

<u>Tammy Smith Incident Report (Bryan Decl., Ex. B)</u>: 8/2/2018 while standing on the train and next to the train on the track, conductor tickled by an elderly, male, passenger who had previously asked her violative personal questions. The incident did not involve a homeless person who was loitering in GCT (plaintiff offers no evidence that this individual was homeless), but a passenger on and next to a train.

Andre Beliveau Incident Report (Bryan Decl., Ex. C): 5/3/2018 onboard the train, passenger pushed conductor into a safety bar after conductor asked passenger not to touch a bag. MTAPD was called but passenger departed prior to their arrival. Again, this incident occurred on a train, not in the terminal, and it did not involve a loitering homeless person (plaintiff offers no evidence that this individual was homeless), but a passenger on the train.

Jason Rumble Incident Report (Bryan Decl., Ex. D): 5/21/2018 employee was in GCT cleaning the sink in the west side men's room when he advised a customer not to use a sink that he was cleaning. The customer told employee that he did not have to be a dick about the sink, and then threw a can of Lysol at employee's ankle. Nothing in the report suggests that the offending individual was a homeless person.

Elisa Medina Incident Report (Bryan Decl., Ex. H): 4/2/2018 Conductor Medina was in the elevator in GCT when she was approached by an identified male who pursed his lips and looked like he was going to kiss her. She pushed him off and another employee told him to leave. He shouted the N word at her as he walked away down the "Oyster Bar ramp." There is no reason to believe that this individual was homeless or a vagrant; furthermore, this incident involved verbal harassment, not assault, and so would not have put anyone on notice of a potential for violence or causing physical injury.

Joseph Delvalle Incident Report (Bryan Decl., Ex. I): 6/5/2018 Employee is a coach cleaner for Metro North. He was walking back to GCT on track 28 after cleaning a train when a passenger stepped into his way and cursed at him, continued to block him, and eventually spit on him. Employee shoved passenger, got away, and then alerted an MTAPD officer. They were unable to locate the offending individual. There is no evidence that this individual was a vagrant or homeless person; the report specifically identifies him as a passenger. Moreover, this incident did not occur in the main concourse of GCT, which is where the plaintiff was assaulted.

Michael Dent Incident Report (Bryan Decl., Ex. E): 7/30/2018 Employee was working on the lower level of GCT, approached his friend and fellow employee to talk when he was punched by woman who turned out to be the other employee's intoxicated sister. This incident did not involve a homeless person or a vagrant who was loitering, but a relative of an employee who was drunk and who was accompanying her brother, another employee of WHOM.

Richard Scarponi Incident Report (Bryan Decl., Ex. J): 11/19/2018 Employee stepped out of GCT at the Vanderbilt Ave exit door and was approached by a homeless man looking for money. The homeless man got angry, verbally assaulted employee, and spit on employee's pant leg. This incident could not have put anyone on notice of anything because it occurred AFTER the incident that is the subject of this lawsuit. It is not admitted for that reason.

The following 2 reports will be admitted:

Philip Porter Incident Report (Bryan Decl., Ex. F): 1/31/2018 A homeless woman told GCT employee he had beautiful eyes, tried to touch his eyes, and then "aggressively lunged at his

eyes," and scratched him in his right eye. He pushed her away and she calmed down and walked away from the scene.

Brooke Rodriguez Incident Report (Bryan Decl., Ex. G): 7/17/2018 7/17/2018 A Metro North ticket saleswoman refused to exchange a panhandler's coins for bills, he called her a stupid bitch and then walked away. Ms. Rodriguez told her supervisor about the incident and they contacted the MTAPD about the incident. The MTAPD did not respond, and then the panhandler returned to the ticket window and threw cup of yellow liquid (which she identified as urine) at Ms. Rodriguez through the sales window, some of the liquid landed on her uniform. The panhandler qualifies as a vagrant who was allowed to loiter in the terminal – although the court notes that, in this Circuit, he had a Constitutional right to be present in the terminal to beg for money, and the jury will be so instructed. *Loper v. New York City Police Dep't*, 802 F. Supp. 1029, 1047 (S.D.N.Y. 1992), *aff'd*, 999 F.2d 699 (2d Cir. 1993).

4.  Defendant's motion in limine to bar the testimony of persons who have no personal knowledge of the events in suit is DENIED.

    I have no idea why they are being called or what it is that the plaintiff intends to elicit from them. Of course, these individuals will not be permitted to testify to things that they were told by others if that evidence is offered for the truth of the matter asserted.

5.  Defendant's motion in limine concerning the relationship between the MTA Police and defendant MetroNorth is DENIED.

    The issue of agency is an issue to be tried. At the trial, if notice to the MTA Police is to be deemed notice to Metro North, plaintiff must prove by a preponderance of the evidence that the MTA Police were agents of Metro North. This court would have been delighted to see a motion for summary judgment on this point, but none was made; so we will hear plaintiff's evidence of agency. I emphasize PLAINTIFF's evidence, because plaintiff has the burden of proof on this issue. I am certain that if a motion for a directed verdict is denied or reserved on, defendant will be putting on considerable evidence about the corporate structure of various MTA-related agencies and subsidiaries – presumably with an eye to the elements of agency under New York law, which is how the jury will be instructed. The jury will most definitely be told that a corporate relationship does not automatically give rise to an agency; I want the plaintiff to be aware of that going into the trial.

*Motions Addressed to Damages*

The trial of this case will be bifurcated; the jury will not hear any damages evidence unless the jury concludes that MTA violated some duty that it had toward the plaintiff.

6. Defendant's motion in limine addressing the scope of treating physician evidence is GRANTED. Treating physicians who were not disclosed as experts and who did not submit expert reports will not be permitted to testify about anything other than their treatment of the plaintiff.

7. Defendant's motion in limine concerning argument about the amount of damages plaintiff should recover for pain and suffering is GRANTED.

8. The court reserves on defendant's motion in limine addressing damages from other injuries until we can discuss it at the final pre-trial conference.

The clerk is directed to remove the motions at Docket ## 41, 44, 47, 50, and 53 from the court's list of open motions.

Dated: September 22, 2021

_____
U.S.D.J.

BY ECF TO ALL COUNSEL